UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY COOPER,

                    Petitioner,

        v.

UNITED STATES OF AMERICA,

                    Respondent.

Case No. 13-CV-3769 (KMK)
Case No. 08-CR-356 (KMK)

OPINION & ORDER

KENNETH M. KARAS, District Judge:

Petitioner Gregory Cooper ("Petitioner"), proceeding pro se, files this Motion to Vacate, Set Aside, or Correct His Sentence ("Petition") pursuant to 28 U.S.C. § 2255.  Petitioner challenges his conviction for two counts of conspiracy to commit mail fraud, in violation of 18 U.S.C § 1349, and nine counts of mail fraud, in violation of 18 U.S.C §§ 1341–42.  (*See* Pet'r's Mot. Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct His Sentence ("Pet.") (Dkt. No. 1).)  Also before the Court is Petitioner's Motion for Appointment of Counsel, Discovery, and an Evidentiary Hearing ("Motion").  (*See* Mot. for Appt. of Counsel, Discovery, and Evidentiary Hr'g ("Mot.") (Dkt. No. 2).)  For the reasons set forth below, Petitioner's applications are denied.

I.  Background

A.  Factual Background

While assuming the Parties' general familiarity with the factual and procedural background of this case, the Court will briefly summarize the facts most salient to the instant motions.

### 1.  The Trial

Petitioner's convictions arise from events that took place from in or about late 2003 through approximately April 2008.  (*See generally* Resp't's Mem. of Law in Opp. To Pet'r's Mot. Pursuant to 28 U.S.C. § 2255 ("Gov.'s Mem.") 2–10 (Dkt. No. 9).)  The evidence at trial established that, during this time period, Petitioner orchestrated two distinct but related fraudulent schemes.  In the first, Petitioner and his co-conspirators defrauded mortgage brokers around the country by convincing them to buy bogus lists of potential customers.  (*See* Trial Tr. 751–52.)  At Petitioner's direction, his salespeople, including cooperating co-conspirator Lawrence Burke ("Burke"),[1] called mortgage brokers to offer them the opportunity to purchase lists containing homeowners who had supposedly identified themselves as being interested in refinancing their mortgages.  (*See id.* at 60, 125, 160, 280, 601–02, 763–64, 1115.)  However, Petitioner's "mortgage lead business was a total sham" that convinced mortgage brokers to pay substantial sums of money for packages of "bogus leads" based on fabricated sources.  (Gov.'s Mem. 5–6.)  *Cf. United States v. Burke*, 445 F. App'x 395, 397 (2d Cir. 2011) ("The evidence at trial established that in both schemes [Petitioner] and his co-conspirators made oral misrepresentations to their victims about the products being sold.").  Though Petitioner did not personally engage in sales calls, (*see* Pet'r's Supp. Grounds for Mot. Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct His Sentence ("Pet'r's Supp.") 5 (Dkt. No. 1); *cf.* Gov.'s Mem. 2), he recruited employees, wrote the company's sales pitch, fulfilled orders when sales were made, and managed the business's finances, (*see* Trial Tr. 709, 730–31, 744–45, 763–66).  According

---

[1] Burke pled guilty to three counts of mail fraud and conspiracy to commit mail and wire fraud on October 9, 2008.  Pursuant to a cooperation agreement, he subsequently testified at Petitioner's trial.  (*See* Trial Tr. 692–972.)

to the Government, "[n]ot surprisingly, [Petitioner's] customers had little or no success with the bogus leads." (Gov.'s Mem. 6 (citing Trial Tr. 100, 132–33, 254–56, 299, 341).)

Petitioner continued this scheme through approximately August 2006, operating under several different business names and from several different locations. (*See* Trial Tr. 188, 190, 197, 827–30). As a result, "[f]rom . . . late 2003 through early 2006, [Petitioner] collected approximately $890,000 from more than 400 victims." (Gov.'s Mem. 7.) *Cf. Burke* 445 F. App'x at 398 ("[Petitioner] conceded that the 428 checks that the [G]overnment had identified in its spreadsheets represented payments by mortgage brokers for leads and that he had been paid $890,000 for the leads.").

In the second scheme, Petitioner and his co-conspirators defrauded homeowners in Queens and the Bronx through a predatory mortgage scheme. (*See* Trial Tr. 208–09). During late 2005 and early 2006, Petitioner directed his salespeople, again including Burke and many of the same individuals involved in the mortgage broker scheme, to call homeowners in the New York area to offer them the opportunity to refinance their existing mortgages. (*See* Trial Tr. 1133–34, 1264–65.) Here, just as in the first scheme, Petitioner "did not call the homeowners himself, but, instead, helped to draft sales scripts for his employees and routinely monitored their sales calls." (Gov.'s Mem. 8 (citing Trial Tr. 1077, 1146, 1270).) Notably, Petitioner prescribed the interest rate that these employees were to offer to prospective customers. (*See* Trial Tr. 608–09, 834–35, 1144. However, "terms as favorable as [his company] offered have never existed." (Gov.'s Mem. 8 (citing Tr. 433–34).) *Cf. Burke* 445 F. App'x at 398 ("[T]he district court reasonably concluded based on trial testimony that every individual who refinanced his or her home through [Petitioner's] company was defrauded."). Fully aware of this fact, (*see* Gov.'s

3

Mem. 8), Petitioner instructed his employees to "use[] a variety of tricks to get the homeowner[s] to close on the loan before discovering its true terms." (*Id.* at 9; *see, e.g.,* Trial Tr. 641–44, 862– 63, 872–74, 985–92, 1043–46, 1238–41.)  Petitioner's company thus collected well over "$750,000 in brokerage commissions from dozens of fraudulently induced mortgages." (Gov.'s Mem. 10.)  *See also Burke*, 445 F. App'x at 398 ("[Petitioner] did not dispute the Government's identification of 54 homeowners who had spent approximately $1.275 million in transaction costs as a result of having executed refinancings brokered by [his] company.").

At trial, the Government's proof included testimony from eleven victims of Petitioner's two schemes; testimony from six former employees of Petitioner's fraudulent businesses, one of whom was Burke; several recorded telephone conversations between victims and Petitioner's employees; and various exhibits, such as telemarketing scripts, bank records, and e-mails from Petitioner's personal account.  The defense did not call any witnesses.  *See* Reply Br. for Appellant ("Pet'r's App. Br."), at *6, *United States v. Burke*, 445 F. App'x 395 (2d Cir. 2011) (Nos. 10-CR-1331, 10-CR-3893).  On October 28, 2009, the jury returned its verdict, finding Petitioner guilty on all eleven counts.  (*See* Trial Tr. 1487–89.)

### 2.  The Government's Post-Trial Disclosures

In a letter dated January 14, 2010, the Government advised Petitioner that certain information had not been provided to the defense as required by 18 U.S.C. § 3500 because prosecutors had not discovered the documents until after the trial.  (*See* Pet. Ex. E.)  In addition to producing "several documents created by law enforcement agents in connection with the arrest of Burke and [another co-conspirator]," the Government disclosed "it had recently learned that although Burke had testified that he graduated from Morgan State University ("Morgan State"),

Morgan State was reporting that Burke was a few credits short of graduation." (Gov.'s Mem. 10–11 (citing Trial Tr. 692–93); *see also* Pet. Ex. E.)  Shortly thereafter, Morgan State informed the Government "that Burke had, in fact, received enough credits to graduate[,]" and the Government provided Petitioner with Burke's collegiate transcript reflecting that truth.  (Gov.'s Mem. 11.)

    B.  Procedural Background

    Pursuant to Federal Rule of Criminal Procedure 33, Petitioner filed a timely motion for a new trial on February 3, 2010, which this Court denied on June 8, 2010.  (*Id.* at 11–12.)  The presentence investigation report ("PSR") for Petitioner's sentencing calculated the total offense level under the United States Sentencing Guidelines ("Guidelines") as 35, which included a 16-level enhancement because the offense involved a loss between $1 million and $2.5 million as well as a 6-level enhancement because the offense involved more than 250 victims.  *Burke*, 445 F. App'x at 398.  With a Guidelines Range of 210 to 262 months based on the total level of 35 and a Criminal History Category of III (which Petitioner did not dispute), the Court sentenced Petitioner to a term of 210 months' imprisonment, to be followed by three years' supervised release, on June 8, 2010.  (*See* Gov.'s Mem. 18; Pet. 2.)

    Petitioner appealed his conviction and sentence, challenging the sufficiency of evidence introduced at trial, arguing that this Court abused its discretion in denying his motion for a new trial, and asserting that his sentence of 210 months was procedurally unreasonable.  *Burke*, 445 F. App'x at 396.  By summary order issued on November 3, 2011, the Second Circuit rejected Petitioner's arguments and affirmed both his conviction and sentence.  (*See* Gov.'s Mem. 14; *see also* Pet. 3.)  The Court of Appeals specifically held that the evidence was sufficient to support

Petitioner's convictions for mail fraud, that this Court did not abuse its discretion in denying Petitioner's motion for a new trial, and that this "[C]ourt's determination that a preponderance of the evidence supported a finding that there were at least 250 victims and that the loss amount was between one million and 2.5 million dollars was not clearly erroneous." *Burke*, 445 F. App'x at 396–98.  (*See also* Gov.'s Mem. 17.)  Petitioner next filed a petition for writ of certiorari, which the Supreme Court denied on June 4, 2012.  *See Cooper v. United States*, 132 S. Ct. 2731 (2012).

Petitioner filed the instant Petition on May 31, 2013, (Dkt. No. 1), along with his Motion for Appointment of Counsel, Discovery, and an Evidentiary Hearing, (Dkt. No. 2).  The Government submitted its response on October 10, 2013, (Dkt. No. 9), and Petitioner filed his reply on January 9, 2014 (Dkt. No. 12.)  Petitioner also filed a motion to expand the record, (Dkt. No. 13), which the Court granted on October 14, 2015.  (*See* Dkt. No. 143 (08-CR-356 Dkt.).)

## II.  Discussion

### A.  Motion for Appointment of Counsel, Discovery, and an Evidentiary Hearing

#### 1.  Appointment of Counsel

Although there is no constitutional right to counsel in civil cases, courts have the authority to appoint counsel for indigent plaintiffs.  *See* 28 U.S.C. § 1915(e)(1).  Nonetheless, "[b]road discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision."  *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).  When analyzing whether appointment of counsel is appropriate, the Court undertakes a two-step inquiry.  *See Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203–04 (2d Cir. 2003).  First, the Court "'should [] determine whether the [movant]'s position seems likely to be of substance.'"  *Id.* at

203 (quoting *Hodge*, 802 F.2d at 61); *see also Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010)

("This Court considers motions for appointment of counsel by asking first whether the claimant

has met a threshold showing of some likelihood of merit." (internal quotation marks omitted)).

The claim must not be so "highly dubious" that the plaintiff appears to have no chance of

success. *Hodge*, 802 F.2d at 60 (internal quotation marks omitted). In making this

determination, the Court construes pleadings drafted by pro se litigants liberally and interprets

them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of

Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).

Second, if the threshold requirement is met, the Court will then proceed to consider other

prudential factors such as the movant's

> ability to investigate the crucial facts, whether conflicting evidence implicating the
> need for cross-examination will be the major proof presented [to the fact finder],
> [the movant]'s ability to present the case, the complexity of the legal issues[,] and
> any special reason . . . why appointment of counsel would be more likely to lead
> to a just determination.

*Ferelli*, 323 F.3d at 203–04 (internal quotation marks omitted); *see also Garcia v. USICE (Dep't

of Homeland Sec.)*, 669 F.3d 91, 98–99 (2d Cir. 2011) (listing *Hodge* factors).

In this case, Petitioner seeks habeas relief on the grounds that he received ineffective

assistance of trial counsel and that his conviction and sentence cannot be sustained in light of the

Supreme Court's decision in *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct.

2296 (2011). (*See* Pet. 5–10; Pet'r's Supp. 1–12.) He contends that counsel "is needed to gather

facts, su[b]peona witnesses[,] and . . . make legal arguments to support [his] claims" as well as

"to research issues of law, depose witnesses, and . . . obtain the production of documents." (Mot.

at unnumbered 1.) For the purposes of Petitioner's request for appointed counsel, the Court

7

assumes that Petitioner's Motion has "some likelihood of merit" and can satisfy the threshold requirement under *Hodge*. *Johnston*, 606 F.3d at 41 (internal quotation marks omitted).

However, the relevant prudential considerations augur against the appointment of counsel here. For one, Petitioner does not explain what sort of discovery would support his claims, nor does he explain why counsel is necessary to conduct such discovery. While a pro se litigant will often "be found unable to investigate the facts of his or her claim where, for example, he or she will be incarcerated for the duration of the case," *Walters v. N.Y.C. Health Hosp. Corp.*, No. 02-CV-751, 2002 WL 31681600, at *2 (S.D.N.Y. Nov. 25, 2002) (citing *Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir. 1997)), that concern is less compelling here because Petitioner was witness to most, if not all, of the events and facts giving rise to his claims. *See Goodson v. Sedlack*, No. 99-CV-10419, 2000 WL 278087, at *2 (S.D.N.Y. Mar. 14, 2000) (declining to appoint counsel where "[the] plaintiff ha[d] an intimate knowledge of the facts and circumstances which [were] the most relevant to [the] action[,]" though the "[p]laintiff's ability to investigate the case, due to his incarceration, is limited"). Additionally, Petitioner appears capable of pursuing his case without the assistance of counsel. His "properly filed submissions have been presented with care and set forth relevant facts . . . adequately and competently," thereby demonstrating Petitioner's ability to compile crucial facts and convey arguments to the Court. *Boston v. Brown*, No. 10-CV-1494, 2014 WL 726683, at *10 (E.D.N.Y. Feb. 24, 2014). Furthermore, his claims "are not so complex or unique that a person of [Petitioner's] intelligence would be unable to handle them at this stage." *Mena v. City of N.Y.*, No. 12-CV-28, 2013 WL 1165554, at *2 (S.D.N.Y. Mar. 19, 2013); *see also Hughley v. Brown*, No. 08-CV-617, 2008 WL 4682335, at *2 (E.D.N.Y. Oct. 21, 2008) (denying the petitioner's motion for appointed counsel

where the court "[did] not find the legal or factual issues in th[e] case to be particularly complex"). The lack of any demonstrated "efforts to obtain counsel" on the part of Petitioner further obviates the appointment of counsel, for he has neither indicated any attempt to search for his own legal representation nor established his inability to undertake such steps. *Bligen v. Woughter*, No. 09-CV-3841, 2010 WL 779330, at *2−3 (S.D.N.Y. Mar. 5, 2010) (denying a motion for appointment of counsel where the "petitioner provides no information concerning the steps, if any, he has taken to find an attorney on his own"). Although the Court holds submissions from pro se litigants "to less stringent standards than formal pleadings drafted by lawyers" and provides such solicitude as "a function of their necessary inexpertness in the law," *Hayes v. Dep't of Educ. of N.Y.C.*, 20 F. Supp. 3d 438, 446 (S.D.N.Y. 2014) (internal quotation marks omitted), Petitioner has not provided the Court with sufficient grounds to determine that appointment of counsel would be more likely to lead to a more just determination in this case. For these reasons, Petitioner's request for appointment of counsel is denied.

   2. Discovery

   A "habeas petitioner, unlike the usual civil litigant in federal court[,] is not entitled to discovery as a matter of ordinary course," and the Court may grant discovery only "upon a showing of 'good cause.'" *Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003) (some internal quotation marks omitted); *see also Ferreiras v. United States*, 895 F. Supp. 2d 504, 512 (E.D.N.Y. 2012) (reaffirming "that '[a] judge may, for good cause, authorize a party to conduct discovery'") (quoting *Bracy v. Gramley,* 520 U.S. 899, 904 (1997)); *Pizzuti v. United States*, 809 F. Supp. 2d 164, 175−76 (S.D.N.Y. 2011) ("The Second Circuit has noted that Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that a § 2255 petitioner is entitled to

9

undertake discovery only when the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." (alterations and internal quotation marks omitted)). "Generalized statements regarding the possible existence of discoverable material do not constitute good cause." *Capalbo v. United States*, No. 02-CR-1237, 2012 WL 611539, at *3 (S.D.N.Y. Feb. 24, 2012). To that end, denial of a petitioner's motion is appropriate where the petitioner fails to "present 'specific allegations' that give the [c]ourt 'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Pizzuti*, 809 F. Supp. 2d at 176 (second alteration in original) (some internal quotation marks omitted) (quoting *Bracy,* 520 U.S. at 908–09); *see also Charles v. Artuz,* 21 F. Supp. 2d 168, 169–70 (E.D.N.Y. 1998) (rejecting the petitioner's motion for discovery as a "fishing expedition . . . merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error" (internal quotation marks omitted)).

Petitioner seeks testimony from three individuals identified by the Government as victims of Petitioner's fraudulent schemes. However, Petitioner has not shown that testimony from them, or from any others, would assist him in demonstrating entitlement to relief. *See Bracy,* 520 U.S. at 904 (stating that before deciding whether discovery should be allowed, the district court must identify the "essential elements" of the petitioner's claims that the requested discovery would support (internal quotation marks omitted)); *Toolasprashad v. Tryon,* No. 12-CV-734, 2013 WL 1560176, at *3 (W.D.N.Y. Apr. 11, 2013) (denying the petitioner's motion for discovery because "documents responsive to [the discovery demand] would not expose relevant evidence that would advance th[e] habeas proceeding"). Rather, Petitioner simply

contends that discovery would "prove these [three] 'alleged victims' don[']t consider themselves victims at all[,]" which, in turn, would supposedly lead to "many other people willing to tell the truth about their satisfaction with [him] and [his] firm." (Mot. at unnumbered 2; *see also* Pet'r's Reply to the Gov.'s Mem. ("Pet'r's Reply") at unnumbered 10 (Dkt. No. 12).) This contention, however, falls short of Petitioner's "heavy burden in establishing a right to discovery" because his "broad and speculative" requests for this discovery include no reason to believe that there will be this cascade of victims who will change their minds about being harmed by Petitioner. *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 364 (E.D.N.Y. 2013), *appeal dismissed* (Mar. 10, 2014). Moreover, that *some* individuals may not see themselves as victims of Petitioner's criminal activities bears neither on the viewpoints of others nor, more importantly, on the illegal nature of Petitioner's activities. *See, e.g., Burke*, 445 F. App'x at 398 (approving this Court's conclusion "that there were no legitimate lead lists sold to any mortgage broker").[2] Whether a handful of Petitioner's customers were satisfied carries no relevance to his criminal liability, for the evidence overwhelmingly demonstrated that Petitioner and his co-conspirators sold products that differed from what they were represented to be.

Petitioner has failed to demonstrate specifically how the discovery he requests might advance his Petition. Accordingly, his Motion for Discovery is denied. *See Hirschfeld v.*

---

[2] As the Government rightly notes, Petitioner and his co-conspirators "imposed a loss on every mortgage broker and homeowner who spent money to purchase the leads and refinance a mortgage, even if [Petitioner] is correct that some of those customers failed to discover that they had been swindled." (Gov.'s Mem. 29.) *See United States v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 971 (D.C. Cir. 1998) ("[W]hen an individual is swindled, the offender does not escape mail or wire fraud liability just because the victim was unwary, or even gullible." (internal quotation marks omitted)); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991) (rejecting "the mistaken acceptance of an underlying assumption that the customer's belief or reliance is an element of mail fraud").

*Comm'r of Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y. 2003) (denying the petitioner's request to conduct discovery where he "failed to make specific allegations to show that he might be entitled to relief if the facts are developed more fully through discovery").

### 3. Evidentiary Hearing

The mere act of filing a motion pursuant to § 2255 "does not entitle [a] petitioner automatically to a hearing." *Cruz v. United States*, No. 05-CV-6477, 2007 WL 541698, at *3 (S.D.N.Y. Feb. 20, 2007) (internal quotation marks omitted) (quoting *Newfield v. United States,* 565 F.2d 203, 207 (2d Cir. 1977)). Rather, a habeas petitioner must allege a "plausible" claim in order to obtain an evidentiary hearing. *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (noting that "the defendant need establish only that he has a 'plausible' claim" to warrant a hearing); *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993) (requiring a hearing be held where "[the petitioner] has presented a 'plausible' or 'viable' claim"); *United States v. Aiello,* 814 F.2d 109, 113 (2d Cir. 1987) (holding that a hearing is appropriate only when the petition contains "assertions of fact that a petitioner is in a position to establish by competent evidence"); *Brown v. United States*, No. 05-CR-857, 2011 WL 3273202, at *9 (S.D.N.Y. Aug. 1, 2011) ("[T]he Second Circuit has held that a hearing is not required 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.'") (quoting *United States v. Seiser,* 432 F.2d 809, 812 (2d Cir. 1970)). District courts are not required to hold hearings prior to deciding a petitioner's motion pursuant to § 2255 where (1) the allegations in support of the motion, even accepted as true, would not entitle the petitioner to relief, or (2) the documentary record conclusively belies the petitioner's claim. *Chang v. United States*, 250 F.3d 79, 85–86 (2d Cir. 2001); *see also Schriro v. Landrigan*, 550 U.S. 465,

474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Newfield,* 565 F.2d at 207 (noting that a petition supported by a "sufficient" affidavit including detailed and controverted issues of fact warrants a hearing, whereas "bald allegations" unsupported by evidentiary facts do not (internal quotation marks omitted)).  As such, "summary dismissal may be appropriate if [the] petitioner is unable to raise detailed and controverted issues of fact." *Cruz,* 2007 WL 541698, at *3 (citation and internal quotation marks omitted); *see also United States v. Logan*, 845 F. Supp. 2d 499, 519 (E.D.N.Y. 2012) ("Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . . .")

As discussed below, Petitioner has not made the requisite showing under either of the stringent prongs of *Strickland v. Washington*, 466 U.S. 668 (1984).[3]  Because Petitioner has established neither that trial counsel's overall performance was ineffective nor that trial counsel's alleged omissions prejudiced Petitioner's defense, conducting an evidentiary hearing would serve no purpose in this case.  *See Chang,* 250 F.3d at 86 (considering "the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing").  Therefore, Petitioner's motion for an evidentiary hearing is denied.

---

[3] As Petitioner's Motion for Appointment of Counsel, Discovery, and an Evidentiary Hearing makes no reference to his claim regarding *Janus*, the Court sees no need to address that section of the Petition here.

B.  Motion to Vacate, Set Aside, or Correct His Sentence

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[4]  A claim for ineffective assistance of counsel, such as the one presented here, may be brought by way of a § 2255 petition, even if a petitioner could have raised such a claim on direct appeal.  *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  *Yick Man Mui*, 614 F.3d at 54 (citation and internal quotation marks omitted).  To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)

---

[4] Section 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

(citation and internal quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Brama v. United States*, No. 08-CV-1931, 2010 WL 1253644, at *2 (S.D.N.Y. Mar. 16, 2010).

As noted above, a court ruling on a § 2255 petition is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (same). A hearing is not required "where the allegations are 'vague, conclusory, or palpably incredible.'" *Id.* (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To justify a hearing, the petition must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle the petitioner to relief. *See id.* at 131. Also as previously noted, a district court construes each pro se petition liberally and interprets it to raise the strongest arguments that it suggests. *See Triestman*, 470 F.3d at 474–75.

Here, Petitioner seeks habeas relief on the grounds that trial counsel was ineffective for (1) "failing to discover an error" in the Government's Guidelines calculation and to challenge the "erroneous loss amount," (2) providing "bad advice" to Petitioner regarding his sentencing exposure, (3) failing to perform diligent pre-trial investigation, (4) failing to move to sever the two conspiracy counts before trial, (5) failing to present certain evidence to the jury, and (6) failing to object to the "fiduciary duty implied by" the Government during its summation. (*See* Pet. 5–10; Pet'r's Supp. 1–4, 7–12.) Petitioner also alleges that his conviction and sentence violate federal law as a result of intervening changes in the substantive law. (*See* Pet'r's Supp.

5–6.)  For the reasons stated herein, the Court denies Petitioner's request for habeas relief on all grounds.

### 1.  Ineffective Assistance of Counsel

The Petition alleges that trial counsel was ineffective in failing to object to the "erroneous loss amount" incorporated in the PSR, used in the Government's Guidelines calculation, and relied on by this Court in ordering restitution.  (Pet. 5, 8.)  Petitioner claims, as a product of this "failure," he received "bad advice" from counsel regarding his "criminal exposure in this case." (*Id.* at 6–7.)  According to the Petition, the overstated loss amount improperly included finance charges in the form of "fees charged by a mortgage broker."  (*Id.* at 5 (citing U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1, cmt. n.3(D) (U.S. Sentencing Comm'n 2004)).) Petitioner thus contends that this "error of counsel" not only strengthened the Government's position "unfairly" but also resulted in an increased sentencing range and term of incarceration for Petitioner.  (*Id.* at 5–7.)

Petitioner further complains about "counsel[']s failure to investigate" prior to trial, which purportedly "led to Burke lying to [the] jury unchallenged" and precluded the potential to call defense witnesses.  (*Id.* at 9.)  Finally, Petitioner also points to counsel's supposed failures to move for severance, to present certain evidence to the jury, and to object to the Government's implication of a fiduciary duty on his part as additional grounds for his ineffective assistance claim.  (*See* Supp. 1–4, 7–12.)

### a.  Standard of Review

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland*.  *See Chaidez v. United States*, 133 S. Ct. 1103, 1107–08 (2013) (noting that

*Strickland* "provides sufficient guidance for resolving virtually all claims of ineffective assistance, even though their particular circumstances will differ" (internal quotation marks omitted)). "First, the [petitioner] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

Petitioner cannot satisfy the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Bonilla v. Lee*, 35 F. Supp. 3d 551, 575 (S.D.N.Y. 2014) (same). Thus, to satisfy this prong, Petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge his [or her] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his [or her] strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also McNaught v. United States*, 646 F. Supp. 2d

372, 378 (S.D.N.Y. 2009) (same).  As the Supreme Court has held, "[p]rejudice can arise . . . if a petitioner can 'demonstrate a reasonable probability [he or she] would have accepted the earlier plea offer had [he or she] been afforded effective assistance of counsel' . . . [and] show 'a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.'"  *Kovacs v. United States*, 744 F.3d 44, 51–52 (2d Cir. 2014) (first alteration in original) (citation omitted) (quoting *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012)).  Moreover, the Second Circuit has explained that "each case is a context-specific application of *Strickland* directed at a particular instance of unreasonable attorney performance."  *Id.* at 52.  Because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial," Petitioner must "affirmatively prove prejudice."  *Strickland*, 466 U.S. at 693.

"In considering an ineffective counsel claim, a court need not accept a petitioner's uncorroborated, self-serving testimony as true."  *Grullon v. United States*, No. 99-CV-1877, 2004 WL 1900340, at *6 (S.D.N.Y. Aug. 24, 2004).  For example, an unsubstantiated claim that but for counsel's errors, the petitioner would have gone to trial need not be accepted as true.  *See United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998) (suggesting that a petitioner must provide "some further 'objective evidence'" beyond "self-serving, post-conviction testimony . . . to establish a 'reasonable probability' that he or she would have accepted the plea agreement"); *Potter v. Green*, No. 04-CV-1343, 2009 WL 2242342, at *15 (E.D.N.Y. July 24, 2009) ("[The] [p]etitioner's only evidence showing that 'but for' counsel's error, [he] would not have pled guilty is [the] [p]etitioner's affidavit; however this statement alone is insufficient.").

Judged under this demanding standard of review, Petitioner's claim of ineffective assistance falls far short of the mark.

<u>b.  Claims relating to the Allegedly Incorrect Loss Calculation</u>

To begin, Petitioner alleges that trial counsel was ineffective for "failing to discover" the allegedly incorrect loss calculation, failing to challenge that error, and thus providing "bad advice" as to Petitioner's sentencing exposure.  (*See* Pet. 5–8.)  During Petitioner's sentencing, the Court accepted the Government's argument that the total loss amount attributable to the homeowner scheme was approximately $1.275 million, representing the transaction costs paid by victims who had refinanced their mortgages through Petitioner's company.  *See Burke*, 445 F. App'x at 398.  Petitioner asserts that some of these transaction costs included "finance charges," such as mortgage broker fees, that, under the Guidelines, are specifically excluded from the calculation of loss.  (Pet. 5.)  In contending that the loss amount incorrectly included such finance charges, Petitioner alleges that counsel's failure to appreciate this error "has constituted prejudice" that ultimately resulted in his receiving a greater sentence.  (*Id.* at 7.)

Petitioner's allegations concerning the "erroneous loss amount" fail because, as the Government highlights, the exclusion for charges in Application Note 3(D)(i) does not apply in this case.  (*See* Gov.'s Mem. 23.)  While Petitioner correctly states that under the Guidelines "loss shall not include . . . finance charges," (Pet. 4 (citing U.S.S.G. § 2B1.1, cmt. n.3(D))), he incorrectly concludes that the "m[ortgage] br[oker] fees in this case" fall within that exclusion, (*id.*).  These fees, paid by the victims of Petitioner's companies, constitute a major part of the "direct losses" suffered by the victims of Petitioner's schemes, (Gov.'s Mem. 23), and "[a] victim's loss will count against the defendant at sentencing if it would not have occurred but for

19

the fraud," *United States v. Warner,* 338 F. App'x 245, 248 (3d Cir. 2009).  In this context, "'but for the fraud' means 'had the defendant refrained from the conduct that gave rise to the fraud,' not 'had the defendant engaged in such conduct but did so lawfully (rather than fraudulently).'" *Id.* at 248 n.2 (citation omitted).  Thus, although Petitioner could have earned the mortgage broker fees legally, the fees paid to his company by each homeowner were the immediate gains of Petitioner's fraudulent scheme and therefore are appropriately characterized as loss under U.S.S.G. § 2B1.1.  *See United States v. Simpson*, 741 F.3d 539, 558 (5th Cir. 2014), *cert. denied*, 134 S. Ct. 2318 (2014) ("[T]he exclusion applies to types of charges that the [victims] did not actually lose out-of-pocket."); *United States v. McCloskey*, No. 09-CR-225, 2013 WL 6185147, at *9 (W.D. Pa. Nov. 26, 2013), *aff'd*, 606 F. App'x 42 (3d Cir. 2015) (holding "broker fees should be included in the loss amount because the fees were generated for loans based upon fraudulent appraisals"); *see generally* U.S.S.G. § 2B1.1, cmt. (backg'd) (explaining that the Guidelines seek to ensure that sentences "reflect the nature and magnitude of the loss caused or intended by [each defendant's] crimes").  Because the exclusion for finance charges does not apply in Petitioner's case, trial counsel's decision not to object to the loss amount at any stage in the proceedings cannot be considered objectively unreasonable.

Yet, even if the exception for finance charges did apply in this case, Petitioner's claims in that regard would fail.  Had the Court found counsel's performance deficient as to the calculation of loss, Petitioner would still need to "affirmatively prove" that "the result of the proceeding would have been different" but for those failings.  *Strickland*, 466 U.S. at 693–94.  "The likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), but here Petitioner is unable to meet *either* benchmark.  For the most

20

part, the Petition neglects to allege any prejudice resulting from the first grounds of his ineffective assistance of counsel claim, as it is unclear how counsel's alleged errors could have possibly altered Petitioner's sentence.  (*See generally* Pet. 5–8.)  Indeed, even where Petitioner contends that "plea negotiations . . . were unfairly tilted in the gov[ernmen]t's favor[,]" and "the gov[ernmen]t would have been negotiating from a weaker and certainly different prospective [sic] trial strategy, witness caling[,] and sentencing position" if not for counsel's alleged deficiency, (*id.* at 6; *see also* Pet'r's Reply at unnumbered 9), Petitioner provides no evidence that use of a different loss amount would lead to a different, "more favorable" outcome "of the criminal process," *Kovacs*, 744 F.3d at 51–52.  In fact, while alleging that counsel was ineffective for failing to challenge the inclusion of certain finance charges, Petitioner ignores the fact that the loss from the mortgage broker scheme—approximately $890,000—also factored into the loss calculation under U.S.S.G. § 2B1.1(b)(1)(I).  Because the 16-level enhancement would apply to Petitioner so long as the offenses involved a *total* loss between $1 million and $2.5 million, (*see* U.S.S.G. § 2B1.1), the Government need only have demonstrated an additional $110,000 in losses from the homeowner scheme to reach the threshold for the same enhancement.  The Petition has in no way shown that the exclusion of the finances charges at issue would have reduced the homeowner loss of $1.275 million to less than $110,000.

Furthermore, Petitioner neither affirmatively indicates he would have accepted a plea offer nor demonstrates any legitimate effect of the loss amount calculation on the jury's verdict. *See Puglisi*, 586 F.3d at 216–18 (concluding that "a hearing . . . would be fruitless" where the movant "failed to provide any statement that he would have accepted the government's plea offer if properly advised"); *United States v. Suri,* No. 09-CR-1190, 2014 WL 3928605, at *5

21

(S.D.N.Y. Aug. 11, 2014) (denying a claim of ineffective assistance where "[the petitioner] has not plausibly alleged that he would have accepted any actual plea offer"). Rather, Petitioner merely contends that "[t]he Gov[ernmen]t's plea offer was *most likely* less desirable than it would have been had the erroneous enhancements and mortgage brokerage commissions been removed from the equation." (Pet. 10 (emphasis added).) The Petition, however, provides no objective proof in that regard. Though Petitioner further offers the conclusory statement that "counsel[']s failure has resulted in an increase in [his] period of incarceration," (*id.* at 7), the "[C]ourt need not accept [] [P]etitioner's uncorroborated, self-serving testimony as true," *Grullon*, 2004 WL 1900340, at *6; *see also Beltran v. United States*, No. 12-CV-3657, 2013 WL 5510774, at *5 (S.D.N.Y. Sept. 26, 2013) (denying the petitioner's ineffective assistance claim where "[h]is threadbare assertions in the petition are his only support for this claim"). Petitioner, therefore, has failed to shoulder his burden to establish actual prejudice under *Strickland*. Accordingly, his allegations concerning counsel's failure to appreciate an error in the loss calculation cannot sustain a claim for ineffective assistance of counsel.

### c. Claim relating to the Alleged Failure to Investigate

Next, Petitioner alleges that counsel was ineffective for failing to conduct a diligent pretrial investigation. (Pet. 9.) He specifically complains of counsel's alleged "failure to investigate" Burke's perjury regarding his graduation from college, asserting "[h]ad counsel done a pre-trial investigation he would have caught Burke[']s perjury in front of the jury and the outcome may have been different." (*Id.*)

Yet, as the Government highlights from the outset, Burke did not commit perjury but, in fact, "testified accurately when he claimed to have graduated" from Morgan State. (Gov.'s

Mem. 26.)  The Government further explains that "even if Burke's testimony had been inaccurate[,]" such that he did not technically graduate, "at worst," it could be said he only "gave false testimony."  (*Id.* (citing *United States v. Rigas*, No. 02-CR-1236, 2007 WL 4145282, at *1 (S.D.N.Y. Nov. 20, 2007), *aff'd*, 583 F.3d 108 (2d Cir. 2009) ("A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." (citation and internal quotation marks omitted))).)

Even if Burke had committed perjury, Petitioner would need to make requisite showings under *both* prongs of *Strickland* in order to obtain habeas relief on that ground.  Assuming, for argument's sake, that Petitioner could "show that counsel's performance was deficient" in failing to conduct an investigation, the necessary showing "that the deficient performance prejudiced the defense" would still be out of reach here.  *Strickland*, 466 U.S. at 687.  In affirming the Court's judgment in this case, the Second Circuit held that "there was no reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Burke*, 445 F. App'x at 397–98. Given this holding, Petitioner cannot demonstrate "a reasonable probability that the end result of the criminal process would have been more favorable" but for counsel's allegedly deficient performance.  *Frye*, 132 S. Ct. at 1409.  Petitioner himself seems to concede the inability to prove a "substantial" likelihood of a different outcome, *Harrington*, 562 U.S. at 112, as he merely speculates that "the outcome may have been different" if "counsel [had] done a pre-trial investigation" and "caught Burke[']s perjury in front of the jury," (Pet. 9).  For these reasons, the Court rejects Petitioner's claim that counsel's alleged failure to investigate is a basis to undo Petitioner's conviction.

<u>d.  Claim relating to the Alleged Failure to Move for Severance</u>

Petitioner further alleges counsel was ineffective in not making a misjoinder motion prior to trial.  His misguided allegation that "[t]he two conspiracy counts of mail fraud in the indictment are on unrelated offenses" aside, (Pet'r's Supp. 1), Petitioner fails to provide any evidence that a reasonable attorney would not have done the same.  Indeed, the language of Federal Rules of Criminal Procedure and Second Circuit case law indicate just the opposite.  Under Rule 8(a), offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan" may be properly joined.  Fed. R. Crim. P. 8(a).  "'Similar' charges include those that are 'somewhat alike,' or those 'having a general likeness' to each other," *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (quoting *United States v. Werner,* 620 F.2d 922, 926 (2d Cir. 1980)), and Rule 8(a) does not require "too precise an identity between the character of the offenses," *United States v. Climico*, No. 11-CR-974, 2013 WL 264776, at *4 (S.D.N.Y. Jan. 23, 2013) (quoting *Werner*, 620 F.2d at 926).

In the instant Action, both conspiracy counts fit squarely under this "liberal standard for joinder." *Id.* at *5.  Through both schemes Petitioner and his co-conspirators made material misrepresentations to potential customers to obtain their money, and essentially the same individuals took part in each.  Petitioner himself concedes that "both . . . used sales solicitations over the telephone."  (Pet'r's Supp. 1.)  Moreover, both schemes related to home mortgages.  These schemes, therefore, were properly joined in the Indictment and tried together.  *See United States v. Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003) (finding joinder of wire fraud and securities fraud conspiracies proper where the conspiracies occurred during the same time period, shared

24

participants, and had a common plan of "generat[ing] income for [the participants] through fraudulent stock transactions"); *United States v. Rittweger,* 259 F. Supp. 2d 275, 284 (S.D.N.Y. 2003) (finding joinder proper where two of the five conspirators overlapped, where the schemes occurred at approximately the same time, and where both schemes were efforts to fraudulently induce investment).  Despite his insistence to the contrary, "the essence of the transactions involved" appears undeniably similar, (Pet'r's Supp. 1), and the minor differences between the two conspiracies do not undermine their joinder, *see Rivera*, 546 F.3d at 253 (finding joinder proper where the counts "share a 'general likeness' in terms of the conduct and events alleged"). The evidence in support of the two schemes was interconnected, which is unsurprising considering the similar players and tactics involved.  *See United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011) (finding joinder proper where, inter alia, the two offenses "required much of the same evidence"); *United States v. Saad*, 380 F. Supp. 2d 286, 288 (S.D.N.Y. 2005) (finding joinder proper where "there is both a substantial overlap in facts and participants and a common scheme unifying the proxy fraud counts with the other securities fraud counts").  Given that the two conspiracies were of a similar character and connected by a common scheme, it cannot be said that a reasonable attorney would have been compelled to object to their joinder.

Moreover, notwithstanding the unsubstantiated contention that "[t]he jury wasn['t able to properly and fairly asses[s] the comingled evidence," (Pet'r's Supp. 4), Petitioner fails to persuade the Court as to "how the joinder of offenses rendered the trial unfair," *Scott v. Kelly*, No. 98-CV-811, 1999 WL 1390251, at *4 (W.D.N.Y. Aug. 24, 1999) ("Absen[t] a showing of how the joinder of offenses rendered the trial unfair, [a] petitioner is unable to show how the defense was prejudiced by his attorney's failure to move for severance . . . .  Without showing

25

actual prejudice, [a] petitioner's ineffective assistance of counsel claim must fail.").  His self-serving claim that "the indictment confused the jury" proves insufficient to establish *any* likelihood of a different result had counsel made a misjoinder motion in the absence of any suggestion that the jury instructions were flawed or that the jury would not follow them.  (Pet'r's Supp. 4 (alleging that "the indictment confused the jury[,] and they convicted because of the confusion of the two distinct conspiracies presented in one trial").)  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (noting that courts can "generally presume that jurors follow their instructions"); *United States v. Stewart*, 433 F.3d 273, 307 (2d Cir. 2006) (reaffirming the "the well-settled proposition that jurors are presumed to follow instructions").  Accordingly, Petitioner's claim for ineffective assistance cannot rest on counsel's decision not to "challeng[e the] indictment as misjoinder."  (Pet'r's Supp. 1.)

### e.  Claim relating to the Alleged Failure to Present Evidence

Petitioner additionally seeks to base his ineffective assistance claim on counsel's alleged failure to present certain evidence at trial.  Specifically, he contends that copies of checks and contracts showing repeat purchasers of his "goods and services . . . should have been shown to [the] jury as . . . exculpatory physical evidence."  (Pet'r's Supp. 7.)  According to the Petition, "[t]his evidence proves that satisfied customers did exist" and "would have demonstrated actual innocence to the jury."  (*Id.*)  Petitioner, however, fails to establish that counsel's decision not to introduce such evidence was objectively unreasonable.

As articulated above, the Court need not heed Petitioner's unsubstantiated claims in the absence of "some further objective evidence."  *Gordon*, 156 F.3d at 380–81 (internal quotation marks omitted).  That some customers may not have recognized their status as victims does not

transform Petitioner's fraudulent scheme into a lawful operation.  *See United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) ("[T]he victim's gullibility . . . is not relevant to the inquiry as to whether the defendants were properly convicted." (citation, internal quotation marks, and italics omitted)).  For example, the mortgage list purchasers were defrauded because Petitioner represented that the lists he sold contained the names of people who had expressed an interest in obtaining a mortgage, when, in actuality, they were just random lists.  To that end, the repeat purchasers, like the rest of Petitioner's customers, were victims because they did not receive what they paid a premium to obtain, even if they had some success using the lists Plaintiff sold them.  Therefore, the Court finds that it was not objectively unreasonable for counsel not to introduce at trial documents or witnesses that had no bearing on Petitioner's guilt.

Without more than his unsupported and self-serving declarations, Petitioner cannot "show that counsel failed to act 'reasonabl[y] considering all the circumstances.'"  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (alteration in original) (quoting *Strickland*, 466 U.S. at 688).  And, "[w]ithout evidence establishing that counsel's strategy arose from the vagaries of ignorance, inattention or ineptitude, *Strickland*'s strong presumption must stand."  *Greiner v. Wells*, 417 F.3d 305, 326 (2d Cir. 2005) (citation and internal quotation marks omitted).  Petitioner's inability to demonstrate that counsel acted unreasonably necessarily defeats the alleged failure to present certain evidence as grounds for ineffective assistance.  And even if deficient performance were plausible under the circumstances, Petitioner's speculative contention that he "may have been acquitted" falls far short of the required showing of actual prejudice under *Strickland*.  (Pet'r's Supp. 8.)  Petitioner does not suggest, let alone establish, any "substantial" likelihood of a different result, *Harrington*, 562 U.S. at 112, which is

27

unsurprising given the compelling evidence of Petitioner's guilt in both schemes.  Accordingly, the Court rejects Petitioner's ineffective assistance claim relating to counsel's decision not to present certain evidence.

### f.  Claim relating to the Alleged Failure to Object

Finally, Petitioner complains that "counsel never objected to [the] fiduciary duty implied by [the] Gov[ernmen]t during summation."  (Pet'r's Supp. 9.)  According to the Petition, this allegedly unreasonable failure "has resulted in [his] wrongful conviction."  (*Id.* at 12.)

An attorney, however, is not required to raise an objection in order to render effective assistance.  First, counsel might have reasonably considered the objection meritless, meaning that he would not have rendered deficient performance.  *See Premo v. Moore*, 562 U.S. 115, 124 (2011) (noting that "the relevant question under *Strickland*" is not whether the motion or objection "would have succeeded," but instead whether "no competent attorney would think a motion [or objection] would have failed").  Second, counsel may have had a legitimate strategic or tactical reason for not raising an objection, which, in effect, would demonstrate effective assistance.  *See Morrison v. McCray*, No. 09-CV-126, 2011 WL 1085306, at *6 (W.D.N.Y. Mar. 21, 2011) (denying a claim for ineffective assistance where it was "possible that counsel made a reasonable strategic decision not to object to [a] statement to avoid highlighting it to the jury"); *Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) (noting that "an attorney's failure to object generally is considered a strategic decision," and finding that it was "possible that trial counsel did not want to draw attention to the testimony").  Third, even the failure to make a meritorious objection does not constitute ineffective assistance where the failure to object did not result in prejudice.  *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993) (noting the petitioner

28

could not demonstrate prejudice under *Strickland* where "the result of the . . . proceeding . . . was rendered neither unreliable nor fundamentally unfair as a result of counsel's failure to make [an] objection"); *Bennett v. United States*, 663 F.3d 71, 88 (2d Cir. 2011) ("[I]n order to show prejudice of the magnitude needed to support a claim of ineffective assistance of counsel, [the petitioner] is required to show a reasonable probability that but for the failures to object, the jury would not have convicted him on some count on which it found him guilty.").

Here, even assuming that an objection during the Government's summation would have been proper, Petitioner has not come close to demonstrating deficient performance by counsel for failing to object.  Petitioner in no way precludes the likely possibility that counsel either considered the objection meritless or made a strategic choice not to object.  In any event, given the weight of the evidence offered against Petitioner at trial, it seems clear that the alleged failure to object to a brief reference to some fiduciary duty of Petitioner cannot constitute prejudice under *Strickland*.  The Court accordingly rejects this final basis for ineffective assistance of counsel and denies Petitioner's request for habeas relief on any of the identified grounds.

### 2.  *Janus*

Petitioner also seeks relief on the grounds that his "conviction and sentence" are "unsustainable today in light of the" Supreme Court's decision in *Janus*.  (Pet'r's Supp. 5.) However, this claim is precluded by virtue of prior adjudication, as Petitioner raised the exact same argument on direct appeal.  (*See* Pet'r's App. Br., at *6 ("Notably, the conviction . . . would appear to be unsustainable today in any event, in light of the Supreme Court's recent decision in *Janus* . . . .").)  In affirming Petitioner's convictions, *see Burke*, 445 F. App'x at 399, the Second Circuit "impliedly resolved" the issue against Petitioner, *see Yick Man Mui*, 614 F.3d at 53

(noting that ineffective assistance claims in a § 2255 proceeding are barred not only where issues were "expressly decided by the appellate court, but also" where issues were "impliedly resolved by the appellate court's mandate").  The courts have consistently emphasized that a § 2255 motion cannot be used to "relitigate questions which were raised and considered on direct appeal."  *Rankins v. United States*, No. 09-CV-2181, 2013 WL 978921, at *3 (S.D.N.Y. Mar. 12, 2013) (internal quotation marks omitted) (quoting *Cabrera v. United States,* 972 F.2d 23, 25 (2d Cir. 1992)); *see also Douglas v. United States,* 13 F.3d 43, 46 (2d Cir. 1993) ("[A]ny claim raised by [the petitioner] . . . that was also raised . . . on direct appeal of his conviction is precluded from consideration by [a c]ourt [on habeas review]"), superseded by statute on other grounds as recognized by *Yick Man Mui*, 614 F.3d at 53.  Because this so-called "mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate," *Yick Man Mui*, 614 F.3d at 53, Petitioner's attempt to take a second bite at the *Janus* apple must necessarily fail.

Putting aside claim preclusion under the mandate rule, Petitioner's argument regarding *Janus* also lacks merit.  In addressing liability in a private action under Rule 10b–5, the Supreme Court concluded that civil liability extends only to the maker of "false statements included in . . . prospectuses."  *Janus*, 131 S. Ct. at 2299 (2011).  Once again, Petitioner fails to explain how this holding diminishes his own criminal liability in the charged mail fraud schemes, and the Court contemplates no reason why it should.  Simply put, Petitioner's conviction and sentence for conspiracy to commit mail fraud and mail fraud lack any real correlation to the securities offenses at issue in *Janus*.  *See Prousalis v. Moore*, No. 12-CV-134, 2013 WL 1165249, at *7

n.20 (E.D. Va. Mar. 20, 2013), *aff'd*, 751 F.3d 272 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 990 (2015) (finding convictions for conspiracy to commit mail fraud and wire fraud, "both general criminal fraud offenses not specific to securities fraud," unaffected by *Janus*). The Court therefore rejects Petitioner's claim for habeas relief on the basis of this "intervening change[] in the substantive law." (Pet'r's Supp. 5.)

### III. Conclusion

For the reasons stated above, the Court denies Petitioner's Motion to Vacate, Set Aside, or Correct His Sentence and his Motion for Appointment of Counsel, Discovery, and an Evidentiary Hearing. As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States,* 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg,* 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith). The Clerk of the Court is respectfully requested to terminate the pending motions and close the case. (Dkt. Nos. 1, 2.)

SO ORDERED.

DATED:    December 22, 2015
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

31